In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-4430

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

BRONSON L. WEBSTER,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 06-CR-173—**William C. Griesbach**, *Judge*.

ARGUED AUGUST 8, 2007—DECIDED AUGUST 30, 2007

Before EASTERBROOK, *Chief Judge*, and COFFEY and MANION, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Bronson Webster punched Leah Tourtillott in the face five times and, after she collapsed, kicked her in the face five times. The attack broke her nose and the bone around her right eye; it also caused lacerations that a physician concluded would leave prominent facial scars. Because the attack occurred on an Indian reservation, it came within federal jurisdiction. 18 U.S.C. §1153. Webster pleaded guilty to an assault that caused serious bodily injury. 18 U.S.C. §113(a)(6). His criminal history category of VI and offense level of 18 (after a reduction for accepting responsibility) produced a range of 57 to 71 months under the Sentencing

Guidelines. The district judge imposed a sentence of 68 months.

Webster maintains that the offense level should have been 16 rather than 18. The range corresponding to an offense level of 16 would have been 46 to 57 months' imprisonment. The two-level difference depends on the application of U.S.S.G. §2A2.2(b)(3), which prescribes seven offense levels for battery that produces "permanent or life-threatening bodily injury" but only five levels for an attack that causes "serious bodily injury". According to Webster, Tourtillott's injuries were "serious" but not "permanent or life-threatening".

They aren't "life-threatening", but they are "permanent", the district court found. Application Note 1 to U.S.S.G. §1B1.1 defines "permanent or life-threatening bodily injury" (a phrase used throughout the Guidelines, though oddly not the subject of many published opinions) as "injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent." The district judge concluded that Tourtillott's scars are "obvious disfigurement" even if her eye and nose bones will mend without degrading her appearance.

Enhancement for a permanent disfigurement is appropriate, Webster maintains, only if the prosecution can prove that the condition cannot be corrected by plastic surgery. Webster contends that these scars may be correctable (or, if permanent, may be ameliorated so that they are not "obvious"). No evidence in the record would allow a judge to find this; the most that any of the surgeons whose evaluations are in this record would venture is that correction "may" be possible. These physicians opined that the prospects for cosmetic surgery could not be evaluated until Tourtillott's condition had stabilized in a year or so.

Like the district judge, we think that this line of argument misunderstands U.S.S.G. §2A2.2(b)(3)(C) and the application note. Uncertainty does not preclude a finding of permanence. Instead of asking whether a victim's future might be brighter, a district court should act on the basis of the victim's current condition and current medical information. If an impairment has not been corrected by the time of sentencing, and will last for life unless surgically corrected in the future, then it should be treated as "permanent" under the Guidelines unless future correction would be a straightforward procedure. (By this we mean that the possibility of correction would be straightforward; the fact that any particular victim may decline to undergo surgery does not justify increasing a sentence compared with the punishment for someone whose victim is more tolerant of medical procedures. The less serious the scar, the less likely that the victim will favor surgical correction; it would invert appropriate principles of deterrence and desert to impose the higher sentence on the person whose crime caused the lesser injury.)

This understanding makes the physical-injury rules parallel to the financial-injury rules. An amount taken from a victim counts as "loss" even if an offender promises to repay in the future. An offender is entitled to full credit against the financial loss only for sums repaid before the crime is detected, U.S.S.G. §2B1.1 Application Note 3(E), and thereafter to partial credit through a reduction for acceptance of responsibility if more is paid by the date of sentencing. The date on which the wrongdoer is sentenced represents the end of predictions; only what has happened by then need be taken into account. Talk is cheap, and it is easy to foresee (or purport to foresee) that victims will be repaid, or their bodily injuries repaired. A judge should rely on what is known at the time of sentencing rather than on predictions of doubtful accuracy.

   Prominent facial scars are a form of "obvious disfigure-
ment." See *United States v. Phillips*, 239 F.3d 829, 848
(7th Cir. 2001); *United States v. Cree*, 166 F.3d 1270,
1271–72 (8th Cir. 1999). The physician who treated
Tourtillott at the emergency room testified that the
scarring will be permanent. Webster does not deny that
her scars, *if* permanent, are obvious disfigurement.
Correction by plastic surgery is not a sure thing. No
more is required to support an enhancement under
U.S.S.G. §2A2.2(b)(3)(C).

AFFIRMED

A true Copy:

        Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*