**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 9, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RICHARD A. JAMES, JR.,

Defendant - Appellant.

No. 18-3227
(D.C. No. 2:17-CR-20029-CM-1)
(D. Kan.)

ORDER AND JUDGMENT[*]

Before **LUCERO**, **MURPHY**, and **EID**, Circuit Judges.

## I. INTRODUCTION

Richard A. James, Jr., pleaded guilty to forcibly assaulting a federal prison

official, Joseph Brian Wilson, while Wilson was acting in the course of his duties.

*See* 18 U.S.C. § 111(a)(1), (b). The district court sentenced James to a term of

180 months' imprisonment, a sentence forty-five months above the top of the

advisory Sentencing Guidelines range. James appeals, asserting the district court

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(1) procedurally erred by adding six levels to his total offense level pursuant to U.S.S.G. § 2A2.2(b)(3)(E),[1] rather than five levels pursuant to § 2A2.2(b)(3)(B); and (2) substantively erred by imposing an overly harsh 180-month sentence. James's appellate arguments are without merit. Thus, exercising jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, this court **affirms** the sentence imposed by the district court.

## II. BACKGROUND

James assaulted Wilson, a "Unit Manager" with the Bureau of Prisons, as Wilson was walking along a row of cells. James attacked Wilson from behind, stabbing him repeatedly in the face and neck with a pair of scissors. Wilson was taken to the Health Services Unit of the prison, where an initial examination revealed he had three puncture wounds to the back of his head and neck; a deep laceration behind his left ear; at least six lacerations on his face; jaw pain; swelling on top of his head; and multiple abrasions on his left arm, left shoulder, upper chest, and left hand. The puncture wounds and lacerations were actively bleeding. Wilson was transported to Saint Luke's Cushing Hospital in Leavenworth, Kansas. The examining physician observed that one of the wounds was of particular concern because of its proximity to the carotid artery. Hospital

---

[1]All citations to the United States Sentencing Guidelines in this opinion are to the 2016 version.

records reflect a clinical impression of: traumatic head injury with multiple lacerations; abrasions at multiple sites; and contusions of the face, right knee, and left rib.

After James pleaded guilty to violating § 111, the United States Probation Office prepared a Presentence Investigation Report ("PSR"). The PSR calculated James's advisory guidelines range at 108 to 135 months' imprisonment based on a criminal history category of III and a total offense level of twenty-nine. In concluding James's total offense level was twenty-nine, the PSR added seven levels because the offense involved permanent or life-threatening bodily injury. *See* U.S.S.G. § 2A2.2(B)(3)(C).[2]

James challenged the PSR's recommendation that his total offense level be increased seven levels pursuant to § 2A2.2(b)(3)(C). He conceded his total offense level should be increased by five levels because Wilson suffered "serious bodily injury." *See id.* § 2A2.2(b)(3)(B). He argued, however, that the seven-

---

[2]The base offense level for a violation of § 111 is fourteen. U.S.S.G. § 2A2.2(a). The PSR added four levels because a dangerous weapon was used, *id.* § 2A2.2(b)(2), and seven levels because the offense involved permanent or life-threatening injury, *id.* § 2A2.2(b)(3)(C). The PSR subtracted one level because the cumulative adjustments from application of §§ 2A2.2(b)(2) and (b)(3) exceeded ten levels. U.S.S.G. § 2A2.2(b)(3). The PSR added two levels because James was convicted under § 111(b), *id.* § 2A2.2(b)(7), and six levels because the assault occurred while James was incarcerated, *id.* § 3A1.2(c)(2). The resulting offense level of thirty-two was decreased by three because James accepted responsibility when he pleaded guilty. *Id.* § 3E1.1(b).

level increase set out in § 2A2.2(b)(3)(C) did not apply because Wilson's injuries were not permanent or life threatening. The government supported the § 2A2.2(b)(3)(C) enhancement and, furthermore, asked for an upward variance and/or departure from the advisory guidelines range to the statutory maximum. *See* 18 U.S.C. § 111(b) (providing for an enhanced maximum penalty of twenty years' imprisonment when an assault on a federal official involves the "use of a deadly or dangerous weapon . . . or inflicts bodily injury"). In support of its request for a statutory maximum sentence, the government argued: (1) James's pre-offense conduct demonstrated a propensity for unprovoked and unpredictable violence; (2) the assault on Wilson was committed in a calculated and egregious manner; (3) James's post-offense conduct demonstrated future dangerousness.

The district court held an evidentiary hearing at which Wilson and others testified. Wilson had seventeen stab wounds and lost a "tremendous amount of blood." James became increasingly aggressive as the attack continued and Wilson thought James would kill him. Wilson was treated for lacerations, abrasions, and contusions. One of the stab wounds was millimeters from Wilson's carotid artery and doctors had trouble controlling the bleeding. In addition to the injuries to his face and neck, Wilson tore his right meniscus when James pulled him down a flight of stairs. Wilson had surgery but will need knee replacement in the future because he now has trouble walking. Wilson also suffered a dislocated jaw,

which resulted in continuing migraines and dental problems. The only way to alleviate these ongoing problems would be to break and reset Wilson's jaw. A Federal Bureau of Investigation special agent testified James attacked Wilson with a pair of beard shears James modified to have sharp ends. James told the agent no one put him up to the attack and he did it because he wanted a "change of scenery." Finally, a BOP officer testified James was involved in another altercation just a few weeks after the attack on Wilson. During a fight between other inmates, James attempted to intervene by passing a thirteen-inch shank to one of the inmates. The government argued the evidence showed James's predisposition for unprovoked and unpredictable violence, the calculated and egregious manner of the attack, and James's continued violent conduct after the attack.

The district court concluded James should receive a six-level increase to his offense level under § 2A2.2(b)(3)(E) because he caused injuries to Wilson that constituted more than "serious bodily injury" under § 2A2.2(b)(3)(B), but less than "permanent or life-threatening bodily injury," under § 2A2.2(b)(3)(C).[3] The

_____

[3]In so ruling, the district court highlighted, inter alia, the following evidence: (1) Wilson made repeated trips to the emergency room to drain facial scars, followed by rounds of antibiotics; (2) Wilson had a procedure to remove skin that was causing infections; (3) Wilson has scarring on his face and head from the stab wounds, which scarring still causes discomfort; (4) Wilson's jaw was dislocated, the dislocation has not fully healed, and the resulting

(continued...)

district court reasoned that Wilson's injuries constituted more than "serious bodily injury," which means "an injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization or physical rehabilitation." *See* U.S.S.G. § 1B1.1 cmt. n.1(L). The injuries did not, however, rise to the level of being permanent or life-threatening, which the Sentencing Guidelines define as an "injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent." *Id.* § 1B1.1 cmt. n.1(J). The district court, therefore, sustained in part and overruled in part James's objection to the seven-level enhancement set out in § 2A2.2(b)(3)(C). Based on this determination, James's total offense level remained at twenty-nine and the resulting advisory Guidelines range remained at 108-135 months' imprisonment.[4]

---

[3](...continued)
misalignment of his teeth results in grinding and weekly migraine headaches; (5) Wilson tore his meniscus in his right knee during the attack, a repair attempt was not completely successful, he still experiences pain in his right knee and wears a brace with regularity, and his physician advised him that the only recourse available is knee replacement surgery; (6) Wilson suffers emotional and psychological difficulties since the attack, including trouble sleeping and nightmares.

[4]This is because of the impact of U.S.S.G. § 2A2.2(b)(3), which limits the cumulative adjustments from application of §§ 2A2.2(b)(2) and 2A2.2(b)(3) to a

(continued...)

In announcing James's sentence, the district court recognized it was required "to impose a sentence that is sufficient but not greater than necessary," 18 U.S.C. § 3553(a)(2), and noted it had considered the Sentencing Guidelines, the PSR, and the statements of the parties. It acknowledged the advisory Guidelines range was 108 to 135 months' imprisonment and stated, in accordance with 18 U.S.C. § 3553(a), it had considered the nature and circumstances of the offense and the history and characteristics of the defendant. In that vein, the district court noted it considered "the extremely serious nature of the instant offense," as well as "the extremely serious nature of defendant's criminal history." The district court noted James's 2015 conviction involved robbing a store at knife point and threatening officers with a knife as they attempted to arrest him. The district court then described the instant offense as "a calculated attack." It considered James's statements to the FBI after the attack, specifically his assertion he attacked Wilson in order to obtain a "change of scenery." The district court noted the scissors used by James were capable of inflicting lethal injuries to Wilson and that the treating physician indicated a stab wound was mere millimeters away from Wilson's carotid artery. In addition, the district court considered James's past mental health diagnoses and treatment, which began

[4](...continued)
total of ten levels. *See supra* n.2.

when James was young.  The district court determined, based on the facts

presented, an upward departure from the advisory guidelines range was warranted

under U.S.S.G. §§ 5K2.2 and 5K2.21.[5]  The district court likewise concluded an

upward variance was warranted based on the factors set out in 18 U.S.C.

§ 3553(a).  It explained that a sentence of 180 months' imprisonment was

"sufficient but not greater than necessary" to reflect the seriousness of the

offense, promote respect for the law, provide just punishment for the offense,

afford adequate deterrence to criminal conduct, and protect the public from

further crimes of the defendant.

### III.  ANALYSIS

"Reasonableness review is a two-step process comprising a procedural and

a substantive component."  *United States v. Verdin-Garcia*, 516 F.3d 884, 895

(10th Cir. 2008).  James asserts the district court committed procedural error

when it concluded he inflicted on Wilson bodily injuries that were more than

---

[5]Section 5K2.2, which authorizes an upward departure for significant physical injury to a victim, specifically advises that "[t]he extent of the increase ordinarily should depend on . . . the extent to which the injury was intended or knowingly risked."  Section 5K2.21 permits an upward departure "to reflect the actual seriousness of the offense[] based on conduct . . . underlying a potential charge not pursued in the case."  In that regard, the PSR indicated the district court might "consider whether the facts of this case establish by a preponderance of the evidence the defendant's intent to commit the crimes of Assault With Intent to Commit Murder, pursuant to 18 U.S.C. § 113(a)(1), or Attempted Murder, pursuant to 18 U.S.C. § 1113."

serious. He also asserts that whether viewed as a variance or a departure, the 180-month sentence imposed by the district court is substantively unreasonable.

Under procedural-reasonableness review, this court "asks whether the sentencing court committed any error in calculating or explaining the sentence." *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1214 (10th Cir. 2008). Procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). In reviewing the district court's sentence for procedural reasonableness, this court reviews the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Shuck*, 713 F.3d 563, 570 (10th Cir. 2013). "A finding is clearly erroneous only if it is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." *United States v. Shippley*, 690 F.3d 1192, 1199 (10th Cir. 2012) (quotation and alteration omitted). Notably, this court has held that the "district court's determination of the significance of a bodily injury is a finding of fact we review for clear error." *United States v. Perkins*, 132 F.3d 1324, 1326 (10th Cir. 1997); *see also United States v. Mejia-Canales*, 467 F.3d 1280, 1282 (10th Cir. 2006).

This court reviews the substantive reasonableness of "all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." *Gall*, 552 U.S. at 41. In undertaking that deferential review, this court looks to the "totality of the circumstances." *United States v. Cookson*, 922 F.3d 1079, 1090 (10th Cir. 2019) (quotation omitted). "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* (quotation omitted). "[S]ubstantive reasonableness addresses whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008) (quotation omitted). "We bear in mind that the sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case because the judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *Cookson*, 922 F.3d at 1091 (quotations, alteration, and citation omitted). For that reason, in reviewing the substantive reasonableness of a sentence, this court "may not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them, as a legal conclusion to be reviewed de novo. Instead, we must give due deference to the district court's decision that the § 3553(a)

factors, on a whole, justify the extent of the variance." *United States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008) (quotation omitted). The district court need not afford equal weight to each § 3553(a) factor, and this court "will defer on substantive-reasonableness review not only to a district court's factual findings but also to its determinations of the weight to be afforded to such findings." *Cookson*, 922 F.3d at 1094 (quotation omitted).

## A. Procedural Reasonableness

The district court did not clearly err in determining Wilson's bodily injuries fell somewhere between serious and permanent or life-threatening. *See* U.S.S.G. § 1B1.1 cmt. nn.1(J), 1(L). The record reveals that the numerous puncture wounds James inflicted on Wilson resulted in permanent facial scarring. That scarring resulted in several trips to the emergency room in the aftermath of the attack. The scars would swell up with infection and result in a "large bloody mass" on Wilson's face. The scars would have to be drained and Wilson placed on intravenous antibiotics. Ultimately, Wilson had to have plastic surgery to remove skin from his face that was causing the recurring infections.[6] The scars

---

[6]Wilson testified as follows as to this surgery:

[Answer]: The doctor informed my wife and I, what he did was he removed the large chunk of skin completely because it was a hair follicle that was growing back into my body. So, he removed the hair follicle, and then he stitched my face back together without

(continued...)

-11-

continue to cause Wilson discomfort. In particular, Wilson's facial scars are "tender," "sunburn easily," and "swell[] up a lot of times." Wilson's jaw was dislocated during the attack and the injury never healed completely. Misalignment of Wilson's teeth results in grinding, different chew patterns, and migraine headaches. The migraines occur "a couple times a week" and have not reduced in intensity or frequency since the attack. The only potential treatment for the dislocation is breaking and resetting the jaw. Finally, Wilson suffered an injury to his knee during the attack that could not be fully corrected through surgery. The knee injury prevents Wilson from engaging in physical activities (like running) that he was able to enjoy before the attack. The knee injury causes Wilson constant pain and "a lot of problems walking." Wilson also regularly wears a brace to deal with weakness in the knee. The only way to remedy the knee pain is with a knee replacement. Wilson's doctor told him, however, that he would not "support" a knee replacement, nor would insurance cover it, because of Wilson's young age. Given all this evidence, the district court did not err, let

---

[6](...continued)
requiring any skin grafting, because it would be hard to match the skin color with any other part of your body on your face.

> [Question]: Do you have a scar from that?

> [Answer]: I have a very large scar. . . .

-12-

alone clearly err, in determining Wilson's injuries, even if not "permanent," were greater than the types of "serious" injuries defined in § 1B1.1 cmt. n.1(L).

In resisting this conclusion, James asserts Wilson's injuries are nothing more than "serious" because they could be remedied through skin-graft surgery, breaking and resetting Wilson's jaw, and knee replacement. In support of this assertion, James relies on the Seventh Circuit's decision in *United States v. Webster*, 500 F.3d 606, 607–08 (7th Cir. 2007). In so arguing, however, James entirely fails to account for the record evidence indicating knee replacement is not a viable option for Wilson's knee injury until some time far into the future and problems finding compatible skin for grafting could render further plastic surgery on the facial scars inadvisable. In any event, James's reliance on *Webster* is entirely misplaced. *Webster* makes clear that in assessing the applicability of a § 2A2.2(b)(3) offense-level enhancement, district courts should generally take victims as they are:

> Uncertainty does not preclude a finding of permanence. Instead of asking whether a victim's future might be brighter, a district court should act on the basis of the victim's current condition and current medical information. If an impairment has not been corrected by the time of sentencing, and will last for life unless surgically corrected in the future, then it should be treated as "permanent" under the Guidelines unless future correction would be a straightforward procedure.

500 F.3d at 608. The record here shows that at the time of sentencing Wilson suffered something approaching permanent injuries. Furthermore, there is no

indication in the record any possible future surgical corrections would entail straightforward procedures. Indeed, the record makes clear that is not the case. Thus, *Webster* does not remotely support James's assertions the district court erred in concluding Wilson's injury were more than serious.[7]

## B. Substantive Reasonableness

This court need not linger on James's substantive reasonableness argument because it is utterly lacking in merit. Given the brutal, calculated, and remorseless attack by James on Wilson and the overwhelming evidence, in the form of his pre-and post-attack criminal conduct, that James is a danger to society, the district court's determination that a 180-month sentence is necessary to account for the sentencing factors set out in § 3553(a) is eminently reasonable.[8]

The district court carefully considered all of the requisite factors in conducting its detailed, individualized assessment of James's situation. Before imposing sentence, it considered the Sentencing Guidelines, the PSR, the

---

[7]Given that *Webster* does not support James's arguments on appeal, this court need not, and does not, decide whether the potential for future surgical repair, even if objectively straightforward, is enough to render an injury impermanent.

[8]The § 3553(a) factors include the nature and circumstances of the offense and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes of the defendant; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

statements of the parties, and the victim's statements. It considered the extremely serious nature of the instant offense, as well as the extremely serious nature of James's criminal history. The district court elaborated that the attack was a brutal, unprovoked act that could have cost Wilson his life and imposed upon Wilson severe, lifetime impacts. The district court considered James's statements after the attack, specifically his comment that he attacked Wilson in order to obtain a transfer. The district court also considered the criminal act that led to James's incarceration and his involvement in prison violence a mere two weeks after the attack. The district court balanced these factors against James's significant mental health issues. The district court explained that a sentence of 180 months was "sufficient but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. It told James, "it does appear that there has been a—a pattern in your past and now present regarding engaging in violent or potentially life threatening criminal conduct, and there does need to be some deterrence to that, as well as protect the public from that type of conduct from you."

Ultimately, James simply disagrees with the manner in which the district court weighed the § 3553(a) sentencing factors in deciding to impose the 180-

month sentence.  It is not, however, "the job of an appellate court to review de novo the balance struck by a district court among the factors set out in § 3553(a)." *United States v. Sells*, 541 F.3d 1227, 1239 (10th Cir. 2008).  Because the district court's sentence falls within the realm of rationally available sentencing choices, it is substantively reasonable.[9]

## IV.  CONCLUSION

For those reasons set out above, the sentence imposed by the United States District Court for the District of Kansas is hereby **AFFIRMED**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge

---

[9]Given this determination, that an upward variant sentence of forty-five months is substantively reasonable, it is unnecessary to determine whether the district court's 180-month sentence resulted from a variance or a departure.