RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0074p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee*,

  *v.*

NIGEL MEDLIN,

      *Defendant-Appellant*.

No. 22-5099

Appeal from the United States District Court for the Eastern District of Kentucky at London.
No. 6:18-cr-00064-3—Claria Horn Boom, District Judge.

Argued: March 9, 2023

Decided and Filed: April 17, 2023

Before: SUHRHEINRICH, COLE, AND MURPHY, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** Justin A. Miller, BRADLEY ARANT BOULT CUMMINGS LLP, Birmingham, Alabama, for Appellant. John Patrick Grant, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee. **ON BRIEF:** Justin A. Miller, BRADLEY ARANT BOULT CUMMINGS LLP, Birmingham, Alabama, for Appellant. John Patrick Grant, Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

───────────────

## OPINION

───────────────

  COLE, Circuit Judge. Nigel Medlin pleaded guilty to one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1). The district court imposed a sentence of 220 months' imprisonment. Medlin appeals the sentence, arguing it is procedurally unreasonable for two

reasons. First, he argues that the court improperly applied a four-level enhancement to his offense level pursuant to U.S.S.G. § 2A4.1(b)(2)(A), which applies "[i]f the victim sustained permanent or life-threatening bodily injury[.]" Second, he claims that there is an unreasonable disparity between his sentence and the sentences of his co-defendants. Because the district court properly applied the sentencing guidelines and the 18 U.S.C. § 3553(a) factors, we affirm.

## I. BACKGROUND

On December 20, 2018, Medlin and co-conspirators were indicted for one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1) and one count of brandishing, using, and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c).

Medlin signed a written plea agreement pleading guilty to count one of the indictment. The facts alleged in the plea agreement, which Medlin admits to and which we accept as true for purposes of this appeal,[1] are as follows. On or about April 2, 2017, based on a dispute over a stolen vehicle, Medlin and three co-conspirators kidnapped T.F., also known as Victim 1, and two additional victims. The kidnappers transported the three victims to a fourth co-conspirator's house. Once at the house, Medlin and the co-conspirators began "physically assaulting" T.F. (Plea Agreement, R. 89, PageID 243.) Medlin took part in some of these assaults.

Throughout the course of the assault, T.F. suffered multiple distinct injuries: one of the co-conspirators broke T.F.'s jaw; they collectively hung a metal logging chain around T.F.'s neck that was heavy enough to weigh his head down; they collectively heated a piece of metal with a blowtorch and used the metal to burn and scar T.F.'s shoulder; a co-conspirator pulled several of T.F.'s teeth and broke one of T.F.'s teeth off at the root; and they collectively forced T.F. to ingest methamphetamine. Eventually, the kidnappers collectively threatened the victims with death if they reported the assault to the police, and then drove the victims to a different area, where they let the victims leave the car.

---

[1]Medlin does not dispute the facts of T.F.'s injuries as set forth in the plea agreement or the presentence investigation report, so we deem these facts admitted. *See United States v. Stafford*, 258 F.3d 465, 475–76 (6th Cir. 2001).

Furthermore, a co-conspirator brandished a firearm "in a threatening manner towards the [v]ictims" on multiple occasions. (*Id.*) And "[b]y and through his involvement and assistance in the kidnapping, [Medlin] aided and abetted [an unindicted co-conspirator] in the use, carrying, and brandishing of a firearm during and in relation to the kidnapping offense." (*Id.*) The presentence investigation report ("PSR") prepared by the U.S. Probation and Pretrial Services Office included additional facts, including that Medlin himself used a firearm to "pistol-whip" T.F., and that he also used the blowtorch to burn T.F.'s arm and shoulder.

In the plea agreement, the parties stipulated that pursuant to U.S.S.G. § 2A4.1(b)(3), Medlin's guidelines' calculation would increase by two levels because a dangerous weapon was used during the kidnapping. The government also provisionally agreed to a three-level reduction for acceptance of responsibility and timely notice of Medlin's intent to plead guilty. The agreement did not stipulate a sentencing range to be imposed by the court, nor did it stipulate a criminal history category. While the agreement waived most of Medlin's rights to appeal, he explicitly retained the right to appeal his sentence.

The PSR, meanwhile, calculated Medlin's offense level as 35. The base offense level for kidnapping in violation of 18 U.S.C. § 1201(a)(1) is 32. U.S.S.G. § 2A4.1. Per the plea agreement, a two-level enhancement applied because dangerous weapons were used in the course of the kidnapping—specifically, the blowtorch, pliers, and firearms. *See id.* § 2A4.1(b)(3).

The PSR also calculated an additional four-level enhancement pursuant to U.S.S.G. § 2A4.1(b)(2)(A), which applies "[i]f the victim sustained permanent or life-threatening bodily injury[.]" The PSR states that "T.F.[] sustained permanent injury through the loss of teeth that were extracted, permanent scarring on his face from the beating suffered, and permanent scarring on his arm/shoulder from being burned with a blow torch. [T.F.'s] injuries were received from strikes in the form of punches, kicks, and by strikes from firearms." (Presentence Report, R. 182, PageID 656.) Relatedly, T.F.'s medical records from April 10, 2017, indicate that he sustained abrasions on his right shoulder, left forearm, forehead, nose, and cheek; bruising across his neck and down to his sternum; a laceration on his scalp; and scabbed skin on his head. The plea agreement, however, did not raise the possibility of this four-level enhancement.

Lastly, the PSR applied a three-level reduction for acceptance of responsibility and timely notification of a guilty plea. *See* U.S.S.G. § 3E1.1(a)–(b). Medlin's criminal history score was six, which establishes a criminal history category of III.

The district court sentenced Medlin on February 18, 2020. Medlin objected to the four-level enhancement recommended in the PSR under U.S.S.G. § 2A4.1(b)(2)(A), and the district court responded to the objection. Reiterating the language of the section, as well as the definition contained in the commentary to U.S.S.G. § 1B1.1, the district court found that the enhancement applied to Medlin's case.

The district court adopted the PSR in full, finding that the appropriate offense level was 35, and that Medlin's criminal history score of six placed him in criminal history category III. The guidelines range was thus 210 to 262 months' imprisonment for a crime that carries a maximum sentence of life. Taking into account Medlin's history of drug abuse, his parents' incarceration during his childhood, his two children, his criminal history, the serious nature and circumstances of the offense, the respective roles of the co-conspirators, and balancing the factors in § 3553(a), the court sentenced Medlin near the lower end of the guidelines range—220 months' imprisonment and five years' supervised release.

Medlin filed a notice of appeal challenging his sentence. We dismissed the appeal as untimely. After Medlin filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, the district court vacated the February 2020 judgment against Medlin and entered an amended judgment solely for purposes of restarting Medlin's appeal time, thereby allowing him to pursue his direct appeal. The district court also agreed to hold in abeyance the remaining two claims in the motion to vacate pending resolution of the direct appeal.

The district court filed an amended judgment on February 7, 2022. Medlin then timely appealed his sentence, bringing us to this decision.

## II. ANALYSIS

"A review for reasonableness has both procedural and substantive components." *United States v. Young*, 847 F.3d 328, 370 (6th Cir. 2017) (citing *Gall v. United States*, 552 U.S. 38, 51

(2007)). "The first requirement of a legitimate criminal sentence is a process-driven one." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). Procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51. We review the district court's sentencing decision for procedural reasonableness under a deferential abuse-of-discretion standard. *Id.* And "[a] sentence is substantively reasonable if it is proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Solano-Rosales*, 781 F.3d 345, 356 (6th Cir. 2015) (internal quotation marks and citations omitted).

## A. Section 2A4.1(b)(2)(A) Enhancement

Medlin first argues that his sentence is procedurally unreasonable because of an improper enhancement. We review the district court's factual findings under clear error review and its legal conclusions de novo. *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007). Included in this de novo review is a district court's "interpretation and application" of the sentencing guidelines. *United States v. Cobb*, 250 F.3d 346, 348 (6th Cir. 2001). The analysis of whether the enhancement applies is a highly fact-specific one. *United States v. Baggett*, 342 F.3d 536, 540 (6th Cir. 2003).

### 1. Background

The provision Medlin contests, U.S.S.G. § 2A4.1(b)(2), provides for three potential enhancements:

> (A) If the victim sustained *permanent or life-threatening bodily injury*, increase by 4 levels; (B) if the victim sustained serious bodily injury, increase by 2 levels; or (C) if the degree of injury is between that specified in subdivisions (A) and (B), increase by 3 levels.

U.S.S.G. § 2A4.1(b)(2)(A)–(C) (emphasis added).

As the guideline does not include definitions for the degrees of injuries, the commentary instructs courts to turn to the definitions found in the commentary to U.S.S.G. § 1B1.1. *Id.* § 2A4.1 cmt. 1. As to "permanent or life-threatening bodily injury," the commentary explains:

> "Permanent or life-threatening bodily injury" means injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent. In the case of a kidnapping, for example, maltreatment to a life-threatening degree (*e.g.*, by denial of food or medical care) would constitute life-threatening bodily injury.

*Id.* § 1B1.1 cmt. 1(K). "'Serious bodily injury' means injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." *Id.* § 1B1.1 cmt. 1(M).

The district court applied the four-level enhancement for permanent or life-threatening injuries to Medlin for multiple reasons. First, the court found that T.F.'s injuries involved a substantial risk of death. After explaining the numerous ways in which T.F. was assaulted, the judge said: "[B]y forcing him to ingest the meth, I think that alone involved a substantial risk of death. Pistol-whipping him. Removing—extracting his teeth. Round-house kicking him so that he fell out of the chair. All of those things I believe involved a substantial risk of death." (Tr., R. 192, PageID 599.) Second, the district court held that the injuries also qualified for the enhancement because of T.F.'s "emotional and mental anguish that . . . is likely to be permanent," the scar on his cheek, burn marks on his arm and shoulder, and the pulled teeth, all of which are injuries that fit under the impairment of a function prong. (*Id.*) Third, the district court found that the scarring, as well as the pulled teeth, could qualify as "an obvious disfigurement that is likely to be permanent." (*Id.* at PageID 600.)

Medlin argues that T.F.'s injuries did not rise to the level of a "permanent or life-threatening bodily injury," because the injuries T.F. sustained do not fit the definitions set forth in the commentary, and therefore instead warrant application of either a two- or three-level enhancement. He also asserts that the commentary definitions unlawfully expand upon the guidelines provision, and so the commentary definitions cannot be used to enhance his sentence.

He therefore challenges both "the district court's view of the evidence" as well as "the purely legal question whether the commentary comports with the guidelines." (Reply Br. 1 (cleaned up).)

### 2. Interpreting the Guidelines

"[G]uidelines commentary may only interpret, not add to, the guidelines themselves." *United States v. Riccardi*, 989 F.3d 476, 479 (6th Cir. 2021) (citing *United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019) (en banc) (per curiam)). To that end, we have held that the district court must first analyze the language of the guidelines, and only if they are "genuinely ambiguous" should it turn to the commentary. *Id.* at 485 (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019)). The commentary definitions only stand to the extent that they fall "within the zone of [any] ambiguity" in the guidelines. *See id.* at 485–86 (citations omitted) (brackets in original). When interpreting the guidelines themselves, we "begin[] with the plain meaning." *United States v. Sands*, 948 F.3d 709, 713 (6th Cir. 2020); *see also* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 78 (2012). If the language is unambiguous, the inquiry ends there. But if it is ambiguous, or "the text alone does not admit a single conclusive answer," we may utilize other interpretive tools, including dictionaries. *Sands*, 948 F.3d at 713 (citation omitted).

Here, the guidelines enhancement at issue is not ambiguous. The enhancement allows for a four-level enhancement for any "permanent or life-threatening injury." U.S.S.G. § 2A4.1(b)(2). This phrase is disjunctive and includes two possible types of injuries that lead to the enhancement: either a permanent injury or a life-threatening injury. *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018) (discussing that the ordinary meaning of "or" is "almost always disjunctive" (quoting *United States v. Woods*, 571 U.S. 31, 45 (2013))); *see also United States v. Helton*, 32 F. App'x 707, 716 (6th Cir. 2002) ("And the definition is clearly in the disjunctive[.]").

Therefore, an injury must only be permanent, forever changed without the ability to return to what it once was, *or* so serious as to actually threaten the victim's life, in order to fit

within the four-level enhancement—not necessarily both. At a minimum, T.F. sustained permanent injury via both his pulled teeth and the scarring on his cheek and shoulder.

In the alternative, even assuming the guidelines provision were ambiguous, the interpretation in the commentary that is relevant to Medlin's case would likely fall "within the zone of [any] ambiguity" that exists. *Riccardi*, 989 F.3d at 486 (citations omitted) (brackets in original). The commentary provides that a "permanent or life-threatening injury" includes an "injury involving a substantial risk of death," or the "loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent," as well as "an obvious disfigurement that is likely to be permanent." U.S.S.G. § 1B1.1 cmt. 1(K); *see United States v. Miner*, 345 F.3d 1004, 1006–07 (8th Cir. 2003) (holding that the victim's "permanent scar from removal of a bullet from his neck" along with "the presence of a bullet inside his body" supports the permanent injury enhancement). Once again, just as under the plain meaning of the guidelines provision itself, the pulled teeth and scarring T.F. sustained are permanent bodily injuries, given that these injuries impact the function of a body part and are both obvious, permanent disfigurements. So the district court did not abuse its discretion in applying the enhancement.

Medlin maintains that neither the scarring nor the pulled teeth are permanent injuries, because an injury is not permanent so long as it can heal either naturally or with assistance (i.e., surgery). But Medlin does not cite any of our caselaw to support this proposition. To the contrary, the Seventh Circuit, in defining this enhancement, held that "[i]f an impairment has not been corrected by the time of sentencing, and will last for life unless surgically corrected in the future, then it should be treated as 'permanent.'" *United States v. Webster*, 500 F.3d 606, 608 (7th Cir. 2007). We agree: A permanent injury is one that cannot in time heal and return to itself. Take an example that is analogous to pulled teeth, but at a higher degree of severity: an amputated arm. An individual who loses an arm may be able to obtain full functioning of their arm with increasingly advanced prosthetics. But the arm will never return to its original form. The same is true for T.F. as well. He may undergo surgery and have teeth implanted, but the pulled teeth will never heal to what they were before the injury. That is a permanent injury.

Medlin also quibbles with the district court's reliance on T.F.'s permanent emotional and mental anguish, arguing that the enhancement applies only to physical, not mental, bodily injuries. We do not need to decide this issue given that Medlin's other injuries qualify. But we would note that other circuit courts to rule on it have found that certain injuries to a victim's mental faculty, such as "severe PTSD and its psychological manifestations," may constitute an "impairment of the function of a . . . mental faculty." *United States v. Spinelli*, 352 F.3d 48, 59 (2d Cir. 2003); *United States v. Lowe*, 145 F.3d 45, 53 (1st Cir. 1998); *United States v. James*, 957 F.2d 679, 681 (9th Cir. 1992); U.S.S.G. § 1B1.1 cmt 1(k) ("'permanent . . . bodily injury' means . . . loss or substantial impairment of the function of . . . mental faculty[.]").

We also emphasize that the "bodily injury" itself must be permanent or life-threatening. This requires an analysis of the *actual injuries* the victim sustained, not of the circumstances of the assault, however shocking or egregious. "The enhancement for causing 'bodily injury' is premised upon a particular result, not the defendant's conduct." *United States v. Perkins*, 89 F.3d 303, 308 (6th Cir. 1996). To the extent that the district court relied on the circumstances of the kidnapping to indicate that the enhancement applied under the first definition in the commentary, it erred. But such error is harmless because T.F.'s injuries fit within the plain meaning of "permanent or life-threatening bodily injury."

We have previously affirmed district courts' applications of the U.S.S.G. § 2A4.1(b)(2)(A) enhancement and the commentary found in U.S.S.G. § 1B1.1. *See, e.g.*, *Baggett*, 342 F.3d at 540 (holding that "the finding by the district court that Baggett inflicted permanent or life-threatening bodily injury to the victim," which included a fractured finger, a cracked tooth, "substantial" contusions and bruises, spatial disorientation, and severe bleeding, "was not clearly erroneous"); *United States v. Washington*, 702 F.3d 886, 897 (6th Cir. 2012) (holding the district court did not commit clear error when applying the enhancement for permanent or life-threatening injuries when the victim was shot four times resulting in the use of a colostomy bag, insertion of a steel rod in his leg, and "a permanent impairment in the use of his hand"); *United States v. Mays*, 285 F. App'x 269, 274–75 (6th Cir. 2008) (remanding to the district court with instructions to consider applying the four-level enhancement for permanent or

life-threatening bodily injury when the victim sustained four gunshot wounds and two collapsed lungs).

We continue to do so today, holding that the district court did not abuse its discretion when it applied the enhancement. Medlin's sentence is therefore procedurally reasonable.

## B. Alleged Sentencing Disparities

Medlin separately argues that his sentence must be vacated because the district court erred in comparing the roles of Medlin and his co-defendants, as well as their respective criminal histories, when sentencing Medlin. Because Medlin failed to raise this objection during sentencing, we review the district court's comparisons to his co-defendants for plain error. *See United States v. Donadeo*, 910 F.3d 886, 893 (6th Cir. 2018). Plain error requires "(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010).

True, courts imposing a sentence must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). But § 3553(a)(6) "requires only a national comparison, not a comparison of codefendants in the same case." *United States v. Walls*, 546 F.3d 728, 737 n.3 (6th Cir. 2008) (citing *United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008)). Section 3553(a)(6) is also "an improper vehicle for challenging" a within-guidelines sentence, and Medlin's sentence is within the guidelines range. *United States v. Volkman*, 797 F.3d 377, 400 (6th Cir. 2015). In short, there are no grounds to say that the district court improperly compared the defendants in the case under § 3553(a)(6), and so the district court did not commit plain error. Accordingly, Medlin's sentence is procedurally reasonable.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.