NOT RECOMMENDED FOR PUBLICATION
File Name:  24a0401n.06

No. 23-3914

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 03, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) ) | COURT FOR THE SOUTHERN DISTRICT OF |
| TY BRANDON ROBERTS, | ) ) | OHIO |
| Defendant-Appellant. | ) ) | OPINION |
|  | ) | |

Before:  SUTTON, Chief Judge; READLER and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Ty Brandon Roberts manipulated over a hundred children into sending him sexually explicit images and videos of themselves. He also photographed himself sexually abusing a young boy. All told, Roberts was responsible for creating hundreds of pieces of child pornography over a fifteen-year period. He eventually pleaded guilty to producing child pornography and coercing or enticing a minor to engage in sexual activity. The district court imposed a within-Guidelines sentence of 600 months in prison. Roberts now appeals his sentence, arguing it is substantively unreasonable. But Roberts has not shown the district court abused its discretion, so we affirm.

## BACKGROUND

I.      **Investigation and Arrest**

In January 2022, a man identified in the record as Male A informed law enforcement that he believed Ty Brandon Roberts possessed child pornography.[1] Male A was twenty-six years old and had known Roberts since childhood. He recounted that when he was ten or eleven, Roberts, who was roughly ten years older, photographed him nude against his wishes. The two stayed close into Male A's adulthood.

Male A also shared with police that Roberts, now thirty-seven years old, was in a sexual relationship with a teenage boy he met online. And around two weeks before contacting the police, Male A discovered a shoebox hidden in Roberts's bedroom. Inside, he found two flash drives and over twenty printed photos, some of which showed Male A naked as a child. When Male A returned a week later, the shoebox was gone.

Using the information Male A provided, police secured and executed a warrant to search Roberts's home. There, they seized a Polaroid camera and twelve Polaroid photos depicting Male A, then only eleven or twelve years old, partially or fully nude. Three of those photos showed Roberts sexually abusing Male A. Police also seized several electronic devices. Chat logs and videos from those devices revealed that for years Roberts had manipulated children he met online into producing child pornography. For example, Roberts befriended minors through online platforms like Kik and Skype, pushed them to perform sexual acts over video-chat, and recorded them while they did so. Often, Roberts tricked younger boys into creating and sending sexually explicit content by posing as a teenage girl and sending the boys graphic photos he kept of a minor girl. Sometimes, Roberts offered children gift cards to online gaming platforms in exchange for

---

[1] Some documents refer to Male A as "Victim A" or, in the context of the abuse he survived as a minor, "Minor A." *See, e.g.*, R .23, PageID 85; R. 41, PageID 178.

creating and sending pornographic materials. In total, police recovered over 11,000 images and videos of child pornography from Roberts's home.

In early 2023, Roberts pleaded guilty to one count of producing child pornography in violation of 18 U.S.C. § 2251(a) and (e) and one count of coercing and enticing a minor in violation of 18 U.S.C. § 2422(b). In exchange for his plea, the government dismissed the 26 other charges against him. Neither party objected to the advisory Guidelines range of 360 months to life imprisonment.

## II.     Sentencing

At sentencing, Roberts sought a below-Guidelines sentence of fifteen years. Dr. Jennifer O'Donnell, a psychologist, testified on his behalf. She asserted that Roberts's emotional maturity had stagnated in his "early teen years" because of his unstable childhood and struggles with his sexual orientation. Sent'g Tr. (Part 1), R. 46, PageID 294, 304–05. Dr. O'Donnell believed Roberts's age and criminal history made him unlikely to reoffend, and treatment would lower his risk of doing so. But Dr. O'Donnell calculated Roberts's risk using an actuarial tool that did not consider his guilty plea, the charges the government dropped, and past allegations not resulting in conviction that he had sexually abused other children. *See id.* at PageID 325–26, 333–35. Rather, the tool included only Roberts's *past convictions*, of which there were none.

The government asked for the maximum within-Guidelines sentence of life in prison. FBI Special Agent Andrea Kinzig testified that she had conducted over 100 investigations with the FBI, and Roberts was "in the top 5 to 10 percent of [the] most serious offenders" she had investigated. *Id.* at PageID 339. She estimated that between 2007 and 2022, Roberts manipulated 177 minors into creating sexually explicit materials for him. According to Agent Kinzig, Roberts was responsible for producing "[a]pproximately 718" pieces of child pornography.

Before imposing its sentence, the district court reviewed the factors enumerated in 18 U.S.C. § 3553(a). The court called Roberts's offenses "unusual," "extraordinary," and among "the most serious" it had seen. Sent'g Tr. (Part 2), R. 64, PageID 563–64. It noted that the available sentences were "very harsh" and that it was hard to identify a comparator case to guide its sentencing decision. The court acknowledged Dr. O'Donnell's opinion that Roberts was "emotionally immature" and "struggled with [his] sexual orientation." *Id.* at PageID 564–65. And the court agreed Roberts should undergo treatment.

But it was only a piece of what the court had to consider. Ultimately, "[t]he seriousness of [Roberts's] offense . . . dominat[ed]" the court's analysis. *Id.* at PageID 566. In the court's view, seriousness had "a direct effect upon the risk of recidivism" and "the general danger to the community." *Id.* Although the court praised Dr. O'Donnell's testimony as "helpful in many aspects," it found her calculation of Roberts's recidivism risk "lacking" in "certain necessary ingredients." *Id.* Citing the need to provide a "just sentence" that "creates a deterrent," the court sentenced Roberts to concurrent prison terms of 360 months for producing child pornography and 600 months for coercing or enticing a minor. *Id.* at PageID 567–68. Roberts timely appealed his sentence.

## ANALYSIS

Roberts argues his sentence is substantively unreasonable, meaning the sentencing court "placed too much weight on some of the § 3553(a) factors and too little on others." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). We presume a within-Guidelines sentence is substantively reasonable and review for abuse of discretion. *United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc); *United States v. Pennington*, 78 F.4th 955, 962 (6th Cir. 2023). None of Roberts's arguments persuade us that the district court abused its discretion.

I.      **Risk of Recidivism**

Roberts first argues the district court gave too little weight to his odds of reoffending. *See* 18 U.S.C. § 3553(a)(2)(C) (stating that sentences should be "sufficient, but not greater than necessary" to "protect the public from further crimes of the defendant"). Not so. The court "listened carefully" to Dr. O'Donnell's testimony that based on Roberts's age, nonviolence, and lack of prior convictions, he presented a low recidivism risk. Sent'g Tr. (Part 2), R. 64, PageID 566. But it found Dr. O'Donnell's risk calculation "lacking" because it excluded Roberts's guilty plea, the indictment's other charges, and past allegations that Roberts had sexually abused other children. *Id.*; Sent'g Tr. (Part 1), R. 46, PageID 320–26. So the court looked to "the seriousness of the crimes and offenses," including their duration, as another indicator of Roberts's recidivism risk. *See* Sent'g Tr. (Part 2), R. 64, PageID 566. In other words, the court considered Roberts's likelihood of reoffending, but concluded the risk was high, not low. We give "due deference" to the district court's appraisal. *See United States v. Herrera-Zuniga*, 571 F.3d 568, 591 (6th Cir. 2009).

Roberts counters that the court should have credited his lack of criminal history. It did. In calculating Roberts's Guidelines range, the court assigned him to the lowest criminal history category because he "ha[d] no criminal history prior to this." Sent'g Tr. (Part 2), R. 64, PageID 564. Roberts did not object to the Guidelines calculation.

II.     **Just Punishment**

Next, Roberts contends his sentence was not a "just punishment" because we have upheld lower sentences for defendants who "committed arguably more heinous" crimes. Appellant's Br. at 11. Sentencing courts must consider the need to "provide just punishment for [an] offense." 18 U.S.C. § 3553(a)(2)(A). There is no clear measure for evaluating how "heinous" conduct is within "the panoply of federal offenses." Appellant's Br. at 12. The court compared this case to

others it had seen. On one hand, it described Roberts's case as "unusual and extraordinary." Sent'g Tr. (Part 2), R. 64, at PageID 564. The court found it difficult "to even attempt to qualify or quantify the seriousness" of Roberts's offenses, which were among "the most serious" it had encountered. *Id.* at PageID 563. On the other, the court recognized that Roberts committed nonviolent offenses. It did not abuse its discretion by determining that Roberts's conduct justified a lengthy, within-Guidelines sentence. *See United States v. Allen*, 93 F.4th 350, 360 (6th Cir. 2024).

## III.     Sentencing Disparities

Finally, Roberts asserts that the district court did not sufficiently compare his sentence to those of similarly situated defendants. Courts should consider "the need to avoid unwarranted sentencing disparities" among "defendants with similar backgrounds convicted of similar conduct." 18 U.S.C. § 3553(a)(6); *see United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007). But § 3553(a)(6) is "an improper vehicle for challenging a within-[G]uidelines sentence." *United States v. Medlin*, 65 F.4th 326, 334 (6th Cir. 2023) (cleaned up). Moreover, the court explained that Roberts's "unusual and extraordinary" conduct set his case apart from those with lower sentences. Sent'g Tr. (Part 2), R. 64, PageID 564–65. Deciding "which disparities are unwarranted" was within the district court's discretion. *United States v. Hymes*, 19 F.4th 928, 935 (6th Cir. 2021).

## CONCLUSION

We affirm Roberts's 600-month sentence as substantively reasonable.